IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL SELL,<br><br>Plaintiff,<br><br>vs.<br><br>THE HERTZ CORPORATION,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:09-CV-147 TS |

This matter is before the Court on Defendant The Hertz Corporation's ("Hertz" or "Defendant") Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."[1] In considering whether genuine

---

[1] Fed.R.Civ.P. 56(c).

1

issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## II. STATEMENT OF FACTS

Defendant Hertz is a car rental company headquartered in New Jersey with rental locations throughout the world. Plaintiff Michael Sell ("Sell" or "Plaintiff") was employed by Hertz in Utah for a two year period, from January 8, 2007, to January 15, 2009. Plaintiff was initially hired as a Manager Trainee at Hertz's Draper, Utah rental location (the "Draper Location"). Plaintiff was promoted to Manager Assistant, then to Assistant Manager, and, in December 2007, to Location Manager.

As Location Manager, Plaintiff's duties and responsibilities included the overall management of the Draper location, including oversight of car rentals and returns and supervision of an assistant manager. In July 2008, Plaintiff was offered the position of Location Manager at Hertz's West Valley, Utah location. Plaintiff accepted the transfer and was employed at West Valley until his termination as part of a company wide reduction in force.

---

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

Plaintiff's employment at Hertz was at-will, and either party had the right to terminate the employment relationship with or without cause at any time.[4] At the start of his employment with Hertz, Plaintiff signed an acknowledgment "that no express or implied promise or guarantee with regard to the duration or terms on an employee's employment, wages or benefits [i]s binding upon the Company unless made in writing, signed by an authorized representative or management, and clearly and specifically identified as a contract of agreement."[5]

This action relates to Plaintiff's compensation while employed as Location Manager at the Draper Location during the first and second quarters of 2008. As Location Manager, Plaintif was paid a salary and was also eligible for quarterly bonus awards under the Hertz Off-Airport Bonus Plan (the "Bonus Plan").

Under the Bonus Plan, a Location Manager could receive an award based on the quarterly revenue, profit margin, and/or adjusted pretax profit generated at his or her location.

Among other things, the Bonus Plan stated:

At the discretion of [Hertz] . . . employees are designated to participate in the Plan.
. . . .
This plan does not constitute a binding contract between the Hertz Corporation and employees eligible for consideration for a discretionary bonus under the Plan.
. . . .
The Hertz Corporation reserves the right to modify or suspend, in whole or in part, any or all provision of this Plan.
. . . .
Quarterly awards are in discretion of and require the approval of [Hertz].

---

[4]Docket No. 33, Ex. 1.

[5]*Id*., Ex. 2.

> Except as otherwise provided for herein, Quarterly awards are discretionary and shall not be considered wages or compensation for individual performance.[6]

In addition, the Bonus Plan states that extraordinary items defined as "windfalls" "may be excluded in whole or in part from the computation of awards" and that the "[f]inal determination of the impact of windfalls on bonus computations shall be at the discretion of [Hertz]."[7] The Bonus Plan provides no definition of "windfalls."

There is an issue of fact as to when Plaintiff received a copy of the Bonus Plan. Defendant states that Plaintiff received a copy of the 2007 Bonus Plan in December 2007[8] and received a copy of the 2008 Bonus Plan in February 2008. Plaintiff disputes that he received a copy of the 2008 Bonus Plan in February 2008 and points to the fact that Defendant has been unable to produce a copy of the Bonus Plan with his signature. Plaintiff states that he did not receive a full copy of the 2008 Bonus Plan until after the second quarter of 2008, but acknowledges that he was at least aware of the Bonus Plan, and asked for a copy, as early as December 2007.[9] The timing of Plaintiff's receipt of the Bonus Plan is not highly relevant to this Motion.

On March 5, 2008, Plaintiff's supervisor sent Plaintiff an email with "Appendix I" to the 2008 Bonus Plan as an attachment.[10] Appendix I provides the formula for calculating Location

---

[6] *Id.*, Ex. 3.

[7] *Id.*

[8] The 2007 Bonus Plan is not at issue here.

[9] *Id.*, Ex. 4.

[10] *Id.*, Ex. 6.

4

Manager bonuses, but does not state that bonuses are discretionary or that Hertz has the right to exclude revenue as a windfall, which is set out in the 2008 Bonus Plan. In the same email, Plaintiff's supervisor sent him a bonus calculator.[11] The supervisor stated that these attachments would help calculate Plaintiff's bonuses and expressed excitement about the February and March numbers.[12]

During the first and second quarters of 2008, the rental revenue of the Draper Location was temporarily (but significantly) increased when a long-time Hertz client, Micron Technology, Inc. ("Micron"), sent a large number of overseas employees to receive training in Lehi, Utah. The Micron rentals boosted the gross revenue of the Draper Location by approximately 63%, or $196,000, in the first quarter of 2008 and by approximately 59%, or $149,000, in the second quarter. Plaintiff states that this required him to work longer hours, including weekends, to service the Micron account.

Defendant alleges that Plaintiff's supervisors met with him and warned him that he could not rely on the Micron revenue and that Hertz might exclude it as a "windfall" under the Bonus Plan. Plaintiff disputes that he was ever given such a warning.

Hertz did categorize the Draper Location Micron revenue as a "windfall" in both the first and second quarters of 2008 and excluded it from the calculation of bonuses under the Bonus Plan. Notwithstanding its exclusion of the Micron revenue, Hertz paid Plaintiff discretionary

---

[11]*Id.*

[12]*Id.*

bonuses of $4,628 for the first quarter of 2008 and $7,427 for the second quarter, based on the non-Micron revenue generated at the Draper location.

Plaintiff's supervisor informed Plaintiff of the Micron windfall determination in May 2008, when Plaintiff received his first quarter bonus check. At Plaintiff's request, his supervisor pressed Hertz to reconsider the windfall determination. Hertz did agree to reconsider. Hertz agreed to pay Plaintiff a bonus of $10 for each Micron rental at the Draper Location. As a result, Plaintiff was paid an additional bonus of $3,080 for the first quarter and $1,660 for the second quarter. In total, Plaintiff received bonuses under the 2008 Bonus Plan of $7,708 for the first quarter and $9,087 for the second quarter.

Plaintiff's Amended Complaint states the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) Utah labor code wage claim; (4) Utah labor code attorneys' fees; and (5) promissory estoppel.

III. DISCUSSION

A. BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH

Plaintiff asserts that the email of March 5, 2008, with the attached "Appendix I" was an implied contract guaranteeing him a bonus from his location's revenue of early 2008.

Utah law provides that "when an employee handbook contains a clear and conspicuous disclaimer of contractual liability, any other agreement must be construed in light of the

disclaimer."[13] The Court must determine whether, despite the disclaimer here, there existed an implied-in-fact contract.

For an implied-in-fact contract to exist, it must meet the requirements for an offer of a unilateral contract: (1) "[t]here must be a manifestation of the employer's intent that is communicated to the employee"; (2) that communication must be "sufficiently definite to operate as a contractual provision"; and (3) "the manifestation of the employer's intent must be of such a nature that the employee can reasonably believe" that the offer is a contract modification.[14]

The existence of an implied contract is normally a question of fact which turns on the objective manifestations of the parties' intent and is, therefore, primarily a jury question.[15] However, "'the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists.'"[16]

Defendant argues that there is insufficient evidence of a manifestation of intent that is sufficiently definite, nor is there sufficient evidence that Plaintiff could reasonably believe that Appendix I was a contract for wages. Plaintiff, relying on Appendix I, the bonus calculator, and the email from his supervisor providing these documents, argues that an implied-in-fact contract did exist.

---

[13]*Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 334 (Utah 1992) (citing *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1003 (Utah 1991)).

[14]*Johnson*, 818 P.2d at 1002.

[15]*Id.* at 1001.

[16]*Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 401 (Utah 1998) (quoting *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992)).

In viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is insufficient evidence from which a reasonable jury could find the existence of an implied contract. As stated above, the disclaimer in this case provides "that no express or implied promise or guarantee with regard to the duration or terms on an employee's employment, wages or benefits [i]s binding upon the Company unless made in writing, signed by an authorized representative or management, and clearly and specifically identified as a contract of agreement."[17]

Plaintiff was provided a copy of Appendix I and the bonus calculator in March 2008.[18] Plaintiff was informed that these documents would help him calculate his bonuses.[19] Appendix I states only that Location Managers are eligible to receive a bonus, not that they are entitled to one.[20] A review of these documents shows that they only speak to how bonuses are calculated. They do not speak to how, or under what circumstances, bonuses may be awarded, and they certainly do not negate the unambiguous disclaimer.

Further, the fact that Appendix I is labeled as an "Appendix" suggests that there is more to the document. Plaintiff recognized this when he responded to his supervisor: "There must be something that mentions the terms, including windfalls and anything else that I need to know.

---

[17] Docket No. 33, Ex. 2.

[18] *Id.*, Ex. 6.

[19] *Id.*

[20] *Id.*

The sheet you just sent only tells how to calculate a bonus."[21]  Indeed, as set forth above, Plaintiff was aware that there was a Bonus Plan, though he did not know the contents.

Finally, Appendix I and the bonus calculator do not meet the requirements of the disclaimer, in that it was not signed by an authorized representative of management and is not identified as a contract or agreement.  Plaintiff acknowledged this in his deposition,[22] despite his current argument to the contrary.

Plaintiff also relies upon the fact that it was his supervisor who provided him with Appendix I and the bonus calculator, and that she expressed excitement about the February and March numbers.[23]  This does not establish an implied contract.  Rather, as stated, the email from Plaintiff's supervisor merely states that Appendix I and the bonus calculator would help to calculate bonuses.  Plaintiff's supervisor did not state that Plaintiff was entitled to a bonus, but only provided him with the tools as to how a bonus may be calculated.  As the supervisor's deposition testimony makes clear, any amount derived from these documents must be viewed with caution.[24]  Any excitement that Plaintiff's supervisor expressed about the numbers was premature.  Based on this, the Court finds that no reasonable jury could conclude that Appendix I created an implied-in-fact contract.

---

[21]*Id.*, Ex. 5.

[22]Docket No. 34, Ex. 1 at 153:5-154:11.

[23]Docket No. 33, Ex. 6.

[24]Docket No. 4, Ex. 7 at 39:15-41:6.

Plaintiff also argues that Defendant must "adhere to the Bonus Plan as written."[25] This claim also fails. As the provisions of the Bonus Plan make clear, Defendant had complete discretion over the determination of bonus awards and windfalls, and it exercised that discretion here. Therefore, summary judgment is appropriate on Plaintiff's breach of contract and breach of the implied covenant of good faith claims.

B.  UTAH LABOR CODE

Plaintiff also brings a claim for the payment of wages pursuant under the Utah Payment of Wages Act ("UPWA"). This Court has previously held that there is no private right of action under the UPWA.[26] Therefore, the Court will dismiss Plaintiff's claims thereunder.

C.  PROMISSORY ESTOPPEL

To state a claim for promissory estoppel, Plaintiff must prove four elements:

> (1) [t]he plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.[27]

Here, for substantially the same reasons stated above in relation to his breach of contract claim, Plaintiff cannot show reasonable reliance. Therefore, Defendant is entitled to summary judgment on this claim.

---

[25] Docket No. 37 at 18.

[26] *Sweat v. Batelle Mem'l Inst.*, No. 2:07-CV-401 TS, 2008 WL 4526021, at *3 (D. Utah Oct. 1, 2008).

[27] *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007) (quotation marks and citation omitted).

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 31) is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff on all claims.  The hearing set for October 29, 2010, as well as the final pretrial conference and trial dates, are STRICKEN.

DATED   October 20, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge